IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SCOTT LEWIS RENDELMAN, #332884 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. JFM-06-1999 |
| JON P. GALLEY, WARDEN | * | |
| In his individual and official capacity | | |
| Defendant. | | |
| | *** | |

## **MEMORANDUM**

In this 42 U.S.C. § 1983 civil rights complaint for damages and other miscellaneous relief, Scott Rendelman complains that while housed at the Western Correctional Institution ("WCI") in July of 2006, he was attacked by cell mates in separate incidents. Plaintiff states that he is Jewish, stands 5'7", and weighs less than 135 pounds. He claims that on July 3, 2004, Shamar Anderson, a 325 pound inmate, was placed in his cell. Plaintiff complains that Anderson brutally beat him and took his property. He further states that officers intentionally failed to respond to his screams for help and refused to move him to another cell or provide him requested medical treatment. Plaintiff alleges that he was forced to remain housed with Anderson for another three days and had to endure Anderson's threats of harm.

Plaintiff asserts that on July 6, 2006, he finally saw a prison nurse. He claims that the nurse noted his injuries and took a urine sample, but did nothing with regard to his "broken rib" and "bruised kidneys." Plaintiff further submits that on July 6, 2006, he met with WCI staff psychologist Hendershot, who indicated that she would have officers find a more suitable cell mate and move him to another cell. He states that he was moved to another cell that same day.

Plaintiff seemingly contends that he went from one bad situation to another with the cell move, because he was next housed with Michael Hancock, a violent neo-Nazi inmate, standing 5'11" and weighing 200 pounds. Hancock allegedly belongs to a prison gang Dead Man Incorporated or

"DMI", and told plaintiff that he killed an inmate in 2004. Plaintiff states that on July 6, 2006, Hancock beat him because he is Jewish. He again complains that despite his screams for help, no prison staff came to his aid. Plaintiff claims that he could not fully protect himself because he was still suffering the physical effects of Anderson's beating from several days earlier. He alleges that the second beating left him with injuries to his arms and left hand and bruises all over his back.

Plaintiff contends that he could not complain to officials for fear of retaliation from Hancock and alleges that he was only transferred out of WCI to the Maryland Correctional Institution in Hagerstown ("MCI-H") on July 13, 2006, after secretly writing and mailing a letter to his family on or about July 9, 2006. He states that upon arrival at MCI-H his request to see a physician was refused, but his injuries were documented by an MCI-H officer.

On January 22, 2007, defendant Galley filed a motion to dismiss or, in the alternative, motion for summary judgment, which plaintiff has opposed. Oral hearing is deemed unnecessary. *See* Local Rule 105.6. (D. Md.). For reasons to follow, defendant's motion to dismiss shall be granted.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a

heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Defendant argues, through the affidavit of Case Manager Jeffrey Nines, that this case should be dismissed for plaintiff's failure to exhaust administrative remedies. The court agrees. This complaint falls under the exhaustion prerequisites of § 1997e(a), and plaintiff's claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that defendant has forfeited his right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).[1]

Plaintiff acknowledges that he has not exhausted his remedies. He asserts that administrative exhaustion requirements under § 1997e(a) should be waived because the remedy is futile and because of the imminent danger he was in July of 2006. He further argues that as he originally requested that a court "protective order" be in place before he pursued his remedies, his case should not be dismissed for non-exhaustion, but should be stayed while he pursues his remedies. The court finds these arguments unavailing.

The requirement for exhaustion of administrative remedies can be either statutorily or judicially imposed. Statutory exhaustion requirements are mandatory, while the judicial, or common-law, exhaustion doctrine is discretionary and includes a number of exceptions. *See Beharry v. Ashcroft*, 329 F.3d 51, 56-57 (2d Cir. 2003). In *Booth v. Churner*, 532 U.S. 731 (2001)

---

[1] Under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. *See Chase v. Peay*, 286 F.Supp.2d 523 at 529 (emphasis added).

the Supreme Court expressly found that Congress had statutorily mandated exhaustion under 42 U.S.C. § 1997e(a) and "we will not read futility or other exceptions into statutory exhaustion requirements...." *Id*. at 741.

Prior to filing this case, plaintiff made no attempt to exhaust his remedies, either at WCI or MCI-H or through the Division of Correction Headquarters remedy "adverse effect" bypass procedure.[2] Therefore, defendant's motion to dismiss shall be granted.[3] A separate Order follows.[4]

Date: February 15, 2007                /s/ _____
                                       J. Frederick Motz
                                       United States District Judge

---

[2] Under Division of Correction Directive 185-305, an inmate may submit a request for an administrative remedy to Headquarters if he has reason to believe that knowledge of the complaint among staff or inmates would result in his irreparable harm

[3] In his original complaint plaintiff alleges that "officers deliberately placed cell mates with the plaintiff that would beat him up, deny him medical care after the beatings, and would not move him to safer quarters. Plaintiff does not believe they would do this without the knowledge and consent of the Warden." To establish supervisory liability, plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The court finds that plaintiff's supervisory liability claim against Warden Galley is speculative at best.

[4] It is suggested that plaintiff contact case management personnel to discuss the alleged incidents so that, at a minimum, other inmates may be placed on his OBSCIS enemies' list if warranted.